UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BRITNEY ANN BYRD,                                                                           PLAINTIFF

V.                                           CIVIL ACTION NO. 1:19-CV-00574-HSO-RPM

COMMISSIONER OF
SOCIAL SECURITY,                                                                          DEFENDANT

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

On September 13, 2019, plaintiff Britney Ann Byrd ("Byrd"), proceeding *pro se*,[1] filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") under Titles II of the Social Security Act ("SSA"). Doc. [1].

**II.    FACTS**

**A. Background**

Byrd is a high school educated female, who is married with three children. Doc. [13], at 207. She was 34 years old when she filed her present DIB claim. *Ibid.* Byrd alleges that she became disabled on January 25, 2012 and was last insured, for SSA purposes, on September 30, 2012. *Id.*, at 221. Prior to her onset date, Byrd was employed as a cashier, receptionist, and tax preparer between 2001 and April 2009. *Id.*, at 227.[2] At filing, Byrd claimed that she had five medical

---

[1] Byrd waived her right to counsel at the ALJ hearing and has proceeded *pro se* on appeal. Doc. [13], at 126, 190–203. A *pro se* plaintiff appealing an administrative decision is afforded a liberal construction of his or her pleadings. *Ferrari v. Astrue*, 435 F. App'x 314, 314 (5th Cir. 2010).
[2] Byrd conceded that she has not worked since April 15, 2009, despite her January 25, 2012 onset date. *Id.*, at 209–10, 226.

1

conditions that prevented her from working: (i) fibromyalgia; (ii) depression; (iii) anxiety; (iv) joint pain; and (v) ADHD. *Id.*, at 226. She stated that she was prescribed Adderall for ADHD; Ambien as a sleep aid; Buspar for "nerves;" Cymbalta for depression and fibromyalgia; and "other medications." *Id.*, at 229.

### B. Procedural History

On September 12, 2016, Byrd filed her complete DIB application. The Social Security Administration ("Administration") denied her application for benefits both initially and on reconsideration. Doc. [13], at 173, 178–86.[3] On April 24, 2017, Byrd requested a hearing in front of an Administrative Law Judge ("ALJ"). *Id.*, at 187. Following her request, Byrd was given an in-person hearing in front of ALJ David Benedict, which went forward on August 16, 2018. *Id.*, at 123, 190–202. Following the hearing, on November 9, 2018, the ALJ denied Byrd's claim at step two on the grounds that she did not suffer from any "severe impairments." *Id.*, at 20–21. Thereafter, Byrd filed additional medical records ("Additional Records") and appealed to the Appeals Council ("AC"). *Id.*, at 8, 205. Noting that it had considered the Additional Records, the AC denied Byrd's request for review of the ALJ's decision, and the appeal itself, on July 22, 2019 because there was no "reasonable probability" that the Additional Records would change the ALJ's decision. *Id.*, at 5. [4] On September 12, 2019, Byrd filed a Complaint in the Southern District of Mississippi.

---

[3] In particular, on January 20, 2017, the Administration denied of her DIB application. Doc. [13], at 173. On March 3, 2017, Byrd requested that the Administration reconsider the denial of her claim. *Id.*, at 178. On March 16, 2017, Byrd's DIB application was once again denied on reconsideration. *Id.*, at 179–86.

[4] The Court notes that the AC incorrectly excluded relevant medical records from less than six months after the last date that Byrd was insured, September 30, 2012. In the Fifth Circuit, it is well-established that "non[-]contemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant." *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) (citing *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir. 1984)). "Subsequent medical evidence is relevant . . . because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Id.* (quoting *Basinger*, 725 F.2d at 1169). Here, certain records not considered by the AC were generated less than six months after the date that Byrd's insured status expired, Doc. [13], at 51–55, and dealt directly with her ongoing treatment for, *inter alia*, fibromyalgia, *id.*, at 5. Nevertheless, in this case, the erroneous exclusion of these four pages was harmless error. *See, e.g.*, *Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006).

### C. ALJ Opinion

In his November 9, 2018 decision, the ALJ began by setting forth the five-step analysis. Doc. [13], at 15. At the first step, the ALJ found that Byrd had not engaged in any substantial gainful activity during the period of her alleged onset date of January 25, 2012 through her date last insured of September 30, 2012. *Id.*, at 16. Furthermore, the ALJ concluded that Byrd suffered from three medically determinable impairments, fibromyalgia, depression, and ADHD. *Ibid.* Nevertheless, the ALJ concluded that these impairments, "considered singly and in combination," did not constitute a "severe impairment" under the SSA and accompanying regulations. *Id.*, at 20. He denied her claim.

### III. Arguments

Liberally construing Byrd's pleadings, the Court understands Byrd to be making two arguments on appeal. Doc. [15].[5] First, Byrd argues that the Additional Records call into question the soundness of the ALJ's findings. *Id.*, at 2–3. Second, Byrd argues that the ALJ's determination that her fibromyalgia did not constitute a "severe impairment" was not supported by substantial evidence. *Id.*, at 3. For these reasons, Byrd concludes, the Court should remand the case for further administrative proceedings.

In opposition, the Commissioner argues that substantial evidence supports the ALJ's conclusion that Byrd's fibromyalgia did not constitute a "severe impairment." Doc. [17], at 6. In support of this argument, the Commissioner first argues that the ALJ properly cited *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) by citing Social Security Ruling 85–28, which itself cites

---

[5] In her supporting brief, Byrd argues that the ALJ lacked substantial evidence for denying that her fibromyalgia constituted a "severe impairment." Doc. [15], at 3. However, in support, Byrd argued that the ALJ's decision was erroneous because he did not consider the Additional Records. *Id.*, at 2–3. Byrd's supporting argument is really a distinct ground for appeal that is addressed at the threshold. *See*, *e.g.*, *Whitehead v. Colvin*, 820 F.3d 776 (5th Cir. 2016). Liberally construing Byrd's supporting memorandum, the Court understands Byrd to also be arguing that the Additional Records "cast[] doubt on the soundness" of the ALJ's decision. *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015).

3

*Stone*. *Id.*, at 7. Furthermore, the Commissioner argues, the evidence presented to the ALJ merely consisted of a conclusory "To Whom it May Concern" letter from Byrd's primary-care physician, Dolores Denney, M.D. ("Dr. Denney"), that was properly given little weight. *Id.*, at 7–8. Finally, the Additional Records, the Commissioner argues, were properly addressed by the AC and did not provide any objective evidence requiring remand. *Id.*, at 9 (citing *Sun*, 793 F.3d at 512). For these reasons, the Commissioner concludes, the ALJ's decision should be affirmed and Byrd's Complaint dismissed with prejudice. *Id.*, at 10.

### IV. Standard of Review

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). *See also LeBlanc v. Chater*, 83 F.3d 419 (5th Cir. 1996). Stated differently, it "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). However, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

## V. Five-Step Review Generally

A claimant is "disabled" as defined in the SSA if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ uses a five-step sequential analysis to evaluate claims of disability: "(1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

The burden of proof is on the claimant at the first four steps. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that she could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir.1983). "A finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

## VI. ANALYSIS

### A. Law

When confronted with new and material evidence, the AC "shall evaluate the entire record including the new and material evidence . . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). However, "[t]he regulations do not require the [AC] to discuss the newly submitted evidence, nor is the [AC] required to give reasons for denying review." *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016) (citing *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015)). In the present case, the AC denied review of Byrd's appeal, Doc. [13], at 4–8, so "it was not error for the [AC] to omit a discussion of the additional treatment records submitted . . . ." *Whitehead*, 820 F.3d at 780 (citing *Sun*, 793 F.3d at 511). Nevertheless, "meaningful judicial review of the Commissioner's decision is challenging when there has been no discussion of significant evidence below." *Sun*, 793 F.3d at 512 (citing *Meyer v. Astrue*, 662 F.3d 700, 706–7 (4th Cir. 2011)). The question of whether meaningful judicial review is possible is a threshold determination made before the typical standard of review applies. *Hardman v. Colvin*, 820 F.3d 142 (5th Cir. 2016); *Whitehead*, 820 F.3d at 780; *Sun*, 793 F.3d at 512.[6]

"Significant evidence" is not, however, measured by the mere volume of additional evidence submitted. *See*, *e.g.*, *Molina v. Saul*, No. EP–19–CV–00381–ATB, 2020 WL 4573359, at *4–*5 (W.D. Tex. Aug. 7, 2020). Nor does "significant evidence" refer to additional medical evidence that *supports* the ALJ's decision. *Sun*, 793 F.3d at 512. *See also Hardman*, 820 F.3d at 150. Instead, the additional medical evidence must "cast[] doubt on the soundness" of the ALJ's decision. *Sun*,

---

[6] Stated differently, this is a judicially-crafted gatekeeping question that addresses the Court's ability to review the appeal in the first instance.

6

793 F.3d at 512. *See also Johnson v. U.S. Comm'r, Soc. Sec. Admin.*, No. CV 6:17–1371, 2019 WL 1142708, at *10–*11 (W.D. La. Feb. 11, 2019), *report and recommendation adopted sub nom. Johnson v. Comm'r of Soc. Sec.*, No. 6:17–CV–01371, 2019 WL 1142639 (W.D. La. Mar. 12, 2019). As such, the Court asks whether the additional medical records were sufficiently "significant" that the Court is "unable to determine, considering the record as a whole, whether substantial evidence support[ed] the ALJ's denial of benefits." *Sun*, 793 F.3d at 512.

### B. Application

Here, the additional medical evidence "casts doubt on the soundness" on the ALJ's decision that Byrd did not have a "severe impairment." *Sun*, 793 F.3d at 512. As the ALJ hearing transcript highlights, Byrd predominantly sought disability benefits because she was allegedly suffering from debilitating back pain, Doc. [13], at 128, 133–38, though she listed fibromyalgia as one of her impairments in her DIB application, *id.*, at 226. In line with this focus, Byrd initially furnished medical records that included medical findings showing that Byrd's back pain began in 2014. *See*, *e.g.*, *Id.*, at 16–17. [7] Unfortunately, however, Byrd's alleged onset date was January 25, 2012 and she was last insured was September 30, 2012. *Id.*, at 221.

Caught in what can only be described as a procedural quagmire, the ALJ denied Byrd's claim at the second step. The ALJ first concluded that Byrd's back-pain allegations were not medically determinable because there was no medical evidence showing that she suffered from disabling back pain prior to September 30, 2012. *Ibid.* He further concluded, in relevant part, that Byrd's fibromyalgia was a medical determinable impairment but was not "severe" after considering (i) a two-paragraph "To Whom it May Concern" letter from her primary-care physician, Dr. Denney;[8]

---

[7] The other medical records initially submitted by Byrd were pregnancy-related documents. *Id.*, at 294–310.
[8] Dr. Denney's letter was given little weight by the ALJ because it was not supported by "any supporting treatment notes or other documentation[.]" *Id.*, at 20.

7

(ii) the opinions of two state medical consultants;[9] (iii) a 2016 Third-Party Functioning Report filled out by Byrd's husband;[10] and (iv) his own impressions of Byrd during her live testimony at the hearing. *Id.*, at 17–21. In turn, the ALJ made his decision that, *inter alia*, Byrd's fibromyalgia was not a "severe impairment" on a record largely devoid of pertinent evidence. Nevertheless, after the ALJ rendered his decision, Byrd submitted a trove of largely relevant medical records that were apparently reviewed by the AC. *Id.*, at 5. Many of these documents were directly related to, *inter alia*, Byrd's fibromyalgia. The AC denied Byrd's request for review and denied her appeal. *Id.*, at 4–6. For unknown reasons, the AC declined to discuss the 70 or so pages of Additional Records.

However, Byrd has submitted several relevant documents that cast doubt on the ALJ's conclusion that her fibromyalgia was not a "severe impairment" at step two. *Sun*, 793 F.3d at 512. To begin with, Byrd presented 2010 medical records showing that Dr. James R. Gosey, Jr. suspected that she had fibromyalgia and opined that she had "achy joints" and needed "some therapy" to treat her condition. *Id.*, at 36. He further noted that Relafin, an NSAID, was insufficient to treat her pain. *Ibid.* A rheumatologist then diagnosed Byrd with fibromyalgia in 2011 and further opined that her medication needed to be "managed by psychiatry and that more than drugs will be required (i.e. psycho-therapy) [to treat her]." *Id.*, at 110–11. In 2011, Dr. Denney noted that Byrd's complaints about feeling pain, seemingly at random, when moving around were caused by fibromyalgia. *Id.*, at 68.[11] That same year, Dr. Denney noted that Byrd "had some problems with

---

[9] Both medical consultants, Marcelo Ruvinsky and Medina Gibson, M.D., concluded that Byrd's fibromyalgia was severe. *See* Doc. [13], at 158–63, 165–71. Nevertheless, the ALJ concluded that these conclusions were given little weight because no evidence was put forth to support their respective determinations. *Id.*, at 162, 169.

[10] The questions in the Third-Party Functioning Report were framed to address Byrd's condition at the time that the Report was filled out in September of 2016, not 2012. Doc. [13], at 235–44.

[11] While by no means conclusive, the Court notes that ALJ opinions described around the Fifth Circuit show that plaintiffs with similar fibromyalgia symptoms to Byrd have been found to have "severe" fibromyalgia at the second step. *See*, *e.g.*, *Myers v. Barnhart*, 285 F. Supp. 2d 851 (S.D. Tex. 2002). Cf. *Mayeux v. Comm'r of Soc. Sec. Admin.*, No. CV–16755–EWD, 2018 WL 297588, at *5 (M.D. La. Jan. 4, 2018).

[] pain which is not very well controlled from the fibromyalgia." *Id.*, at 62. Finally, around the alleged onset of her disability in 2012, Dr, Denney noted that Byrd's back was "killing her," her elbows and wrists were "bothering her enough that she is basically not driving except for in [sic] town[,]" and that her treatment with Lyrica had, thus far, been ineffective. *Id.*, at 60.

These records were highly significant at the second step, which only required that Byrd make a *de minimis* showing. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)). Nevertheless, no fact finder has made findings on the record about the Additional Records, which seriously, but not overwhelmingly, conflict with the ALJ's conclusion that Byrd's fibromyalgia "is a slight abnormality having such minimal effect on [Byrd] that it would not be expected to interfere with [Byrd]'s ability to work, irrespective of [her] age, education or work experience," *Salmond*, 892 F.3d at 817 (quoting *Loza*, 219 F.3d at 391). The Court would be required to resolve these conflicts and engage in fact-finding. However, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271).

For these reasons, the case should be remanded for further findings by the Commissioner. In recommending remand, the Court expresses no opinion as to whether Byrd can ultimately establish that she is disabled within the meaning of the Social Security Act.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the case remanded for further proceedings.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time

period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

    **SO ORDERED AND ADJUDGED**, this the 29th day of January 2021.

                                             /s/ *Robert P. Myers, Jr.*
                                             ROBERT P. MYERS, JR.
                                             UNITED STATES MAGISTRATE JUDGE